*In Re* PETITION OF SAMUEL NORRIS, Trustee, *et al.* for an Opinion.

JUNE 11, 1924.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

SWEETLAND, C. J. The petitioners, having adversary interests in questions as to the construction of certain provisions of the will of Theodore W. Phinney, late of Newport, deceased, have concurred in stating such questions in the form of a special case for the opinion of this court. (Section 20, Chapter 339, Gen. Laws, 1923).

Theodore W. Phinney died November 29, 1912, and his will was duly probated. The will has been before this court

previously for the construction of certain provisions. *Robinson for an Opinion*, 45 R. I. 137. In that opinion facts which bear upon the questions here were concisely stated.

The testator left the residue of his estate in trust and directed his trustees, from the income of the trust estate, to pay a certain monthly allowance to the testator's nieces, Anita, Lola and May Phinney, or, to the survivor or survivors of them during their lives for their joint use, to pay a certain monthly allowance to his daughter Alice during her life, and after the payment in full of an indebtedness to his son-in-law, and after a reasonable payment on account of certain mortgages, and a reasonable amount reserved for emergencies, to pay the entire balance of the net income equally to his daughters Rose and Alice during their lives, provided, however, that the monthly payments to the daughter Alice should be charged against her share of the net income. If Alice should die before the termination of the trust, the will provided for the disposition, during the period of the trust, of the share of net income which would have been paid to her if living. Questions arising with reference to her share were before the court in *Robinson for an Opinion*, 45 R. I. 137. The will further provides that "in case of the death of my daughter Rose before the period of distribution hereinafter named, the share of said net income which would otherwise have been payable to my daughter Rose shall be payable equally to her children, share and share alike." The will also provides, that "upon the death of the survivor of my two daughters and of my three nieces above named, this trust shall terminate, and one-half of my said estate shall be paid to the children of my daughter Rose." Then follow provisions for the payment of the other half of the estate to the husband and children of the daughter Alice. The will further provides, referring to the children of a deceased child of either Rose or Alice, as follows: "In all of the above cases, the children of a deceased child shall take the share his or her parent would have been entitled to if then living,—*per stirpes* and not *per capita*."

It does not appear explicitly in the case stated, nor in the arguments and briefs of counsel, that the time has yet arrived when, the indebtedness to the testator's said son-in-law having been discharged, the trustees are to pay the entire balance of said net income equally to the daughters Rose and Alice. We assume, however, from the travel of the matter that prior to the death of Alice in 1918 such time had arrived, and that in accordance with the terms of the trust, the "entire balance of said net income" was payable in equal shares to said daughters during the remainder of their lives respectively, and that it was so paid. Alice died in 1918, Rose died in 1923, the three nieces are living, and said trust has not yet terminated.

At the time of the death of the testator his daughter Rose was the wife of William Grosvenor and had seven children. Six of these children survived her. One son, Robert Grosvenor, born April 9, 1892, died October 27, 1918, intestate and without issue. He left, surviving, his mother and a widow. After the death of the testator, William Grosvenor died, and subsequently the daughter Rose married again. At the time of her death her name was Rose Dimond Phinney Wilder.

Upon the death of Rose in 1923 the questions stated in this petition arose, they are as follows: "(1) Should the one-half of the residue of the net income of the estate of Theodore W. Phinney be divided among the six surviving children of the said Rose Dimond Phinney Wilder, share and share alike, or should said one-half of the residue of said net income be divided into sevenths, one-seventh being payable to the estate of said Robert Grosvenor and one-seventh to each of his surviving brothers and sisters?

"(2) Upon the termination of the trust under the will of Theodore W. Phinney, will the estate of said Robert Grosvenor be entitled to one-seventh of said half of said estate?"

The proper determination of the first question depends upon whether the gift of one-half of the residue of the net income after the death of Rose should be held to have vested in the children of Rose upon the death of the testator or to

have been contingent until their mother's death. The answer to the second question depends upon whether a gift in the principal of the trust fund vested in the children of Rose at the testator's death or remains contingent until the time of distribution, upon the termination of the trust.

These questions, with regard to the time of vesting in the children of Rose of the gifts of income and of principal, like most which arise in the construction of wills, are to be determined in accordance with the intention of the testator, if such intention can be gathered from the provisions of the will. In this case it cannot fairly be said that the testator's intention as to the time of vesting is without doubt. To give the opinion sought in the stated case the court must resort to the aid of certain rules of construction. These are not positive rules of law. By their use courts do not purport to discover the testator's intention. They are applied as tests of that intention, when obscure, in order to reach a judicial determination. A rule recognized in our decisions, and enunciated by the court with approval even in those cases in which it might be claimed that its application has not been made, is that the law favors the vesting of estates, and if the intention be doubtful a legacy will, if possible, be held to be vested rather than contingent. *Staples* v. *D'Wolf*, 8 R. I. 74; *Rogers* v. *Rogers*, 11 R. I. 38.

In construing the many differing testamentary provisions which have been before the courts upon the question of vested and contingent remainders the cases are not entirely harmonious. This is true of our own decisions. It was said in *Melcher, Petitioner*, 24 R. I. 575, that cases "upon vested and contingent remainders have been too numerous and conflicting for an attempt to review or to reconcile them." In considering the English and American cases dealing with the subject, however, one is less impressed by the conflict than by the extent to which courts have gone in support of the vesting of remainders and by the number of auxiliary rules of construction which have been evolved in aid of the general rule favoring vesting.

One rule of construction is: if futurity be annexed to the substance of a gift the inference arises that vesting is postponed. If futurity is annexed to the time of possession only, the legacy vests. In support of their claim that the legacies in question were contingent, the children of the testator's daughter Rose, who survived her, invoke this rule, and urge that, from the terms of the gifts, it should be held that in the gift of income the testator intended to postpone its vesting both in interest and in enjoyment until the death of Rose; and as to the independent gift of principal, until the time of the distribution of the estate. We will first consider the claim with reference to the gift of income.

It was argued to us that in creating the remainder in income the testator looked forward to the death of Rose. In his mind that was "the focal point. That was the time when the interests were to be determined." *Melcher, Petitioner*, 24 R. I. 575. The soundness of the last proposition is at least doubtful. The testator desired to create a life interest in Rose, with remainder to her children. In the logical statement of the plan, he looked forward into the future, to the death of Rose, as the time when the trustees should begin to pay the income to her children. In the statement of a purpose to create a testamentary remainder a testator's mind is of necessity directed forward to the time of the termination of the prior estate. That circumstance, however, does not warrant the conclusion that the testator did not intend to bestow what Fearne has termed "a present fixed right of future enjoyment," which denotes a vested remainder. In *Kelly* v. *Dike*, 8 R. I. 436, the court said: "In determining questions of this nature, the courts construe the estates as vested, rather than contingent, when the expressions of the will are capable of either interpretation. . . . This disposition on the part of the courts is strongest in the more recent cases."

In the will before us there is not an express gift of income to the children of Rose, but such gift is to be assumed from the direction to the trustees, that in case of the death of

Rose before the period of distribution "the share of said net income which would otherwise have been payable to my daughter Rose shall be payable equally to her children share and share alike." There is a rule of construction sometimes applied; that when a testator's gift is found solely. in a direction to pay at a future time it is to be taken as an indication that the gift was contingent, unless the contrary intention appears in the willl. It is a recognized exception to the rule that a testamentary provision in this form does not prevent immediate vesting of the gift if the direction to pay at a future time is for the convenience of the estate or to let in another interest. In this case the gift of income to the children of Rose falls within the exception. To let in the intervening life interest of Rose it was a natural provision for the testator to direct that the payment to her children should commence at her death. That this shall not be taken as indicating an intention to postpone vesting is supportrted by ample authority. *Leeming* v. *Sherratt*, 2 Hare, 14; *Packham* v. *Gregory*, 4 Hare, 396; *Adams* v. *Woolman*, 50 N. J. Eq. 516; *Man's Estate*, 160 Pa. St. 609; *Campbell* v. *Stokes*, 142 N. Y. 23. In *Staples* v. *D'Wolf*, 8 R. I. 74, a similar testamentary provision was before the court. In the report of that case the argument of counsel is incorporated, and it appears that this rule of construction was strongly urged upon the court by a number of distinguished lawyers, representing different interests, yet the court held the legacy to be vested.

The children of Rose now surviving in support of their contention that the bequest to said children was contingent have pressed upon our consideration that paragraph of the will in which the testator makes provision for the children of a deceased child of either of said daughters. The language of the paragraph is as follows: "In all of the above cases the children of a deceased child shall take the share his or her parent would have been entitled to if then living *per stirpes* and not *per capita*." Of the language of this paragraph it is claimed that the testator has indicated his

intention not only as to the quantity of his contingent gift to his great-grand-children but also as to the time when his gift to the children of either of his daughters should vest. The contention is that this paragraph is equivalent to a provision that at the happening of the future event the children of a deceased child shall take the share which would then vest in his or her parent if living. This is not the necessary construction of the language. The word "entitled" should be construed as referring to the possession and not to the right. *Turner* v. *Gosset*, 34 Bea. 593; *In re Noyce*, 31 L. R. Ch. Div. 75; *In re Maunder* (1902) 2 Ch. Div. 875, the last case was affirmed (1903) 1 Ch. Div. 451; 2 Jarman on Wills, 2183. In accordance with the authorities on this point, and in aid of the general rule favoring vesting, the paragraph should be construed to mean that children of a deceased child shall take the share which his or her parent would have been entitled to in possession and enjoyment, if then living.

The paragraph just considered presents another question, as to which there is some conflict in our decisions. The children of a child of Rose take an interest in the income and principal of the testator's residuary estate as purchasers under the will and not through their parent, contingent, as regards the gift of income, upon the event that their parent dies during the lifetime of their grandmother Rose, and, as to the principal, upon the event that their parent dies before the termination of the trust. Does this substitutional provision in favor of the testator's great-grandchildren render the gift to a member of the class comprising the children of Rose at the testator's death contingent, with respect to income dependent for its vesting upon his being a member of the class comprising the children of Rose at her death, and as to principal dependent upon his being a member of the class comprising the children of Rose at the time of the termination of the trust? In *Watson* v. *Woods*, 3 R. I. 226, from the language of a bequest, as the same was interpreted by the court, the testator indicated an intention to give a

remainder in residue, after the death of the life tenant, to the children of such life tenant, and if any of such children should predecease the life tenant, then a substituted gift to children of such deceased child. The court held that the interest of a child of the life tenant was contingent, dependent upon the event that he should survive the life tenant. It should be said in passing, that whether in that case the interest of the deceased child should be regarded as contingent, or as vested with the possibility of defeasance, the result of the decision should be approved, *i. e.*, that a mortgage of his interests in the estate made in his lifetime by a child of a life tenant, who predeceased the life tenant, would be subordinate to the interests of the children of such deceased child if they or either of them survived the life tenant. In *Ross* v. *Nettleton*, 24 R. I. 124, the court considered the bequest of an equitable life interest in residue to a granddaughter of the testatrix, with remainder to the children of the granddaughter, and if the granddaughter died without child surviving her then to other relatives of the testatrix. It was held that the gift to children of the granddaughter was contingent until the death of their mother when it would vest in such children of the granddaughter as were then alive. The court held that the gift to the other relatives of the testatrix, in case of the death of the granddaughter without surviving children, furnished a guide to the construction of this provision, for the reason that the gift to other relatives of the testatrix would be nugatory if that to the children of the granddaughter was vested. The court ignored the principle that an estate vested in right may nevertheless be subject to divestment. The opinions in *Watson* v. *Woods* and *Ross* v. *Nettleton, supra*, are not in accord with the other decisions of this court. In *Staples* v. *D'Wolf*, 8 R. I. 74, although the construction which prevailed in *Ross* v. *Nettleton* was urged by counsel the court did not adopt it. The decision, however, is of little assistance here as it is based upon a construction that the children of such remaindermen as might die between

the death of the testator and the time of enjoyment of the bequest were not to be substituted to the parent. In *Chafee* v. *Maker*, 17 R. I. 739, the question was directly presented and decided. The provision there in question was for an equitable life estate in income and also in so much of the principal as might be needed for the support of J.; if there should be anything remaining at the decease of J. then a bequest in the remainder to the extent of three thousand dollars to M. and all over three thousand dollars to children of the testator's nephews and nieces "and if any of said children should die then the proportion of such as shall die to go to their surviving brothers and sisters." The court held that the remainder to the extent of three thousand dollars vested in M. on the death of the testator, and that the excess of the remainder over three thousand dollars vested in the children of the testator's nephews and nieces on the death of the testator, the share of each child being liable to divestiture by his death before that of the life tenant. The decision in the later cases of *Butler* v. *Butler*, 40 R. I. 425, and *Aldrich* v. *Aldrich*, 43 R. I. 179, agree with *Chafee* v. *Maker* and also with established authority in England and this country. From the English cases Jarman states the rule that in the case of a gift "to A. for life and after his death to his children in equal shares, with a direction that if any of them shall die during A.'s lifetime, the issue of such child shall take his share," . . . "every child who survives the testator takes a vested interest, subject to be divested if he dies during A.'s lifetime, leaving issue. Consequently, if a child dies during A.'s lifetime without leaving issue, his share is not divested. But if he dies during A.'s lifetime, leaving issue, they take his share by substitution." 2 Jarman on Wills (6th Ed.) 1329. *McArthur* v. *Scott*, 113 U. S. 340; *Gibbens* v. *Gibbens*, 140 Mass. 102. The remainder in income to the children of Rose is not to be regarded as contingent by reason of the substitutional gift to their children. It is well established in our decisions that a remainder, although vested in

right, may be divested upon the happening of an event before the remainder vests in enjoyment. Of this nature are remainders which the court has held to be vested but liable to be divested by the exercise of a power of disposition given to the life tenant, (*Moore* v. *Dimond*, 5 R. I. 121; *Grosvenor* v. *Bowen*, 15 R. I. 549) or to be divested, wholly or in part, by the exercise of a power of sale given to a trustee for the benefit of the life tenant. *Kenyon, Petitioner,* 17 R. I. 149. So also is the case of a vested equitable remainder in fee which under the terms of the bequest the court found to be subject to divestment upon the death of the legatee under the age of twenty-five. *Storrs* v. *Burgess,* 29 R. I. 269; *Hayes* v. *Robeson*, 29 R. I. 216. All of these instances of the construction of testamentary provisions as ones creating remainders vested, though liable to be divested upon the happening of a contingency, are referable to and supported upon the principle, that when the testator's intention is doubtful, a condition will, if possible without violating some other established rule, be considered as subsequent, divesting an interest already vested, rather than as precedent, preventing the vesting of such interest.

It has been argued that the remainder in income is contingent because its enjoyment is conditioned upon the death of Rose before the termination of the trust. The gift of income is of such as shall accrue pending the trust. That is the subject of the gift, and it will be extinguished upon the death of the survivor of the three nieces and two daughters of the testator. If Rose should be such survivor, then upon her death, whether the gift of income be considered as vested or contingent, the gift would fail, and her children would come into the enjoyment of the independent gift in the *corpus*. That possibility does not determine the quality of the testator's gift. If the testator had by explicit and unequivocal language expressed his intention that this remainder in income should vest at his death, it would without question be a vested remainder, nevertheless it would never come to enjoyment, if Rose should be the

survivor of the nieces and daughters. Uncertainty as to the amount of a gift or the possibility that the subject of the gift will not be in existence at the termination of the precedent particular estate does not render a gift contingent. An instance in point is that presented above of a vested remainder after a life estate with the possible exercise of a power by the life tenant which will entirely dispose of the subject of the gift. It has been pointed out that, if the possibility that the subject of a gift fails renders the gift contingent, there could be no vested remainders in the residue created by will, for they are all dependent upon there being an estate remaining after the payment of funeral and probate expenses, debts and legacies. *Roberts* v. *Roberts*, 102 Md. 131.

In addition to the matters which we have considered thus far, there are two circumstances connected with this gift, which in doubtful cases have been regarded as positive indications of an intent to create a vested remainder. The gift of principal was of the residue of the testator's estate, and the gift of income was to accrue from the residue. An inference arises that the testator intended these gifts to vest at this death, thus preventing the possibility of intestacy as to the subject of the gifts, a possibility which every testator is presumed not to intend. If the legacy should be regarded as contingent, then in the event of the death of Rose during the period of the trust, leaving no surviving descendant, as there is no direction in the will for the accumulation of income to augment the principal, there has been no direction in the will as to the manner of disposing of the income in such event, and to that extent the testator would have died intestate. *Staples* v. *D'Wolf*, 8 R. I. 74 at 120, *Rogers* v. *Rogers*, 11 R. I. 38 at 74; *Aldrich* v. *Aldrich*, 43 R. I. 179. This appears to have been the controlling consideration in *Booth* v. *Booth*, 4 Ves. Jr. 399.

The fact that the remainder in income is bequeathed to the testator's descendants should be taken as a circumstance strongly supporting the conclusion that he intended it to

vest at the time of his death. This inference of intention has been applied to bequests to children, to grandchildren, and also to descendants of a later degree. The generally accepted rule was approved and applied by the court in *Aldrich* v. *Aldrich*, 43 R. I. 179.

A determination that the remainder in question is vested accords with most of the decisions of this court. *Moore* v. *Dimond*, 5 R. I. 121; *Staples* v. *D'Wolf*, 8 R. I. 74; *Kelly* v. *Dike*, 8 R. I. 436; *Rogers* v. *Rogers*, 11 R. I. 38; *Grosvenor* v. *Bowen*, 15 R. I. 549; *Kenyon, Petitioner*, 17 R. I. 149; *Chafee* v. *Maker*, 17 R. I. 739; *R. I. Hospital Trust Co.* v. *Noyes*, 26 R. I. 323; *Hayes* v. *Robeson*, 29 R. I. 216; *Storrs* v. *Burgess*, 29 R. I. 269; *Butler* v. *Butler*, 40 R. I. 425; *Aldrich* v. *Aldrich*, 43 R. I. 179.

The surviving children of the testator's daughter Rose in support of their claim that both the gift of income and the gift of principal to the children of Rose are contingent have cited the following Rhode Island cases. We have already considered the case of *Watson* v. *Woods*, 3 R. I. 226. The following five cases in which certain gifts in remainder were held to be contingent fall within the same class, are clearly contingent in accordance with principles which are not applicable here, and the cases are not in point.

In *Brown* v. *Williams*, 5 R. I. 309, the court was considering an equitable remainder to the children of the testator's daughter Ann, limited upon the death of his daughter Mary without isssue. The court interpreted the language of the provision in favor of the children of Ann as being a gift to such of the children of Ann as should be living at the death of Mary without issue, and held the gift to the children of Ann to be contingent. The gift was limited upon the uncertain event that Mary should die without issue and upon a condition, personal to the objects of the testator's bounty, *i. e.*, the gift was in terms restricted to such children of Ann as should be living at the death of Mary without issue. This clearly marks the gift to a child of Ann as contingent. In *Tillinghast* v. *Andrews*, 11 R. I. 84, the court was considering

a remainder limited upon a life estate to the testator's wife. The remainder was: "To the children of my late and now brothers and sisters who may be actually alive at the decease of my said wife." In *Bailey* v. *Hoppin*, 12 R. I. 560, there was before the court a remainder created by deed to the children of the grantor and his wife who should be living at the decease of the survivor of the grantor and his wife and to the issue of any child then deceased. In *R. I. Hospital Trust Co.* v. *Harris*, 20 R. I. 408, the gift was of an equitable life interest to a nephew of the testator with remainder, after the death of the life tenant, to the children of the life tenant then alive, and to the descendants of any who may then have deceased. In *Howard for an Opinion*, 36 R. I. 417, the testator gave to his wife the use of his entire estate until her death or remarriage. Upon her death or remarriage, and when the testator's youngest child became twenty-one years of age, the trustee was directed "to convey said estate in equal shares to my children then living and to the descendants of any of them that may have deceased."

In each of the preceding cases upon wills the testator had expressly annexed futurity to the substance of the gift, and imposed a condition personal to the legatee. In varying form the testators used equivalents of the phrase "to such of my children as shall be living" at the termination of the particular estate, which is always held to constitute a condition precedent. They expressly limited the object of their bounty to persons who should be alive at a future time. To hold either of these remainders to be vested would violate the terms of the gift. This form of remainder has been considered at length in the recent case of *Osgood* v. *Thomas*, 45 R. I. 189, and the same conclusion has been reached.

The cases of *Melcher, Petitioner*, 24 R. I. 575, and *Luttgen* v. *Tiffany*, 37 R. I. 416, support the position of the surviving children of Rose. In each of those cases the court found from the terms of the will an intention in the testator to create a contingent remainder. After careful consideration and analysis we think the cases show a tendency to construe,

upon slight indications, expressions of futurity as referring to the substance of a gift rather than to its enjoyment. They are not in harmony with the earlier decisions of the court or the later cases of *Butler* v. *Butler, supra,* and *Aldrich* v. *Aldrich, supra.* In our opinion the tendency appearing in *Melcher, Petitioner,* and *Luttgen* v. *Tiffany* should not be extended.

In reported cases of this nature the courts have been seeking to gather the intention of different testators from the uncertain language of different testamentary provisions. Absolute harmony in the decisions cannot be expected. Upon these questions, however, uniformity of decision can be promoted, with a greater probability of correct conclusion, by the consistent application of those rules of construction in favor of vesting, which have long been employed as guides, although somewhat artificial guides, in determining the intention of a testator, when the same is obscure.

The late Robert Grosvenor was one of the class consisting of the children of Rose at the testator's death. He died without issue; hence his vested interest in the remainder in income was not divested, but passed to his personal representative.

All that we have said in favor of the vesting of the gift of income applies with equal force in favor of the vesting of principal in the children of Rose, who made up that class at the testator's death, with the added circumstance, which has been held to favor vesting, that the gift of one half of the principal was by its terms to the same persons who were to receive one-half of the balance of net income after the death of Rose and pending the trust. *Staples* v. *D'Wolf,* 8 R. I. 74.

It has been urged that certain expressions in *Robinson for an opinion,* 45 R. I. 137, are contrary to the opinion which we have reached here. There was under consideration in that case solely the interests of children of the testator's daughter Alice, in circumstances differing from those before us now. The result of the decision in that case

we approve. Whatever may have been said in that opinion with reference to the interests of children of the daughter Rose, was entirely by the way, as a matter of illustration, and was not intended as a determination of those interests.

We answer the first question presented for our opinion as follows: One-half of the residue of the net income of the trust should be divided into sevenths, one-seventh being payable to the estate of Robert Grosvenor.

Our answer to the second question is: Upon the termination of the trust under the will of Theodore W. Phinney, the estate of Robert Grosvenor will be entitled to one-seventh of the principal of one-half of the estate.

On June 19, 1924, at 9 o'clock a. m., Eastern standard time, the parties may submit a form of decree in accordance with this opinion.

RATHBUN, J. concurs in this opinion.

STEARNS, J. concurs in the result.

VINCENT, J., dissenting. I am obliged to dissent from the opinion of the majority of the court holding that the remainder in question is vested and not contingent. I find in the majority opinion the statement that "a determination that the remainder in question is vested accords with most of the decisions of this court" but I do not think it is in harmony with any of them. The Rhode Island cases, bearing on the question as to whether a remainder is vested or contingent, are substantially uniform in one respect. The final test recognized throughout substantially all of them is, the intention of the testator. Whenever his intention can be determined from an examination of the will it governs. Where the intention of the testator cannot be thus ascertained courts, following the doctrine that the law favors vesting, hold that the remainder must be considered as vested. The case of *Butler* v. *Butler*, 40 R. I. 425 was one where the will furnished nothing evidencing an intent on the part of the testator to create a contingent remainder and it was therefore held to be vested.

*Robinson*, for an opinion, 45 R. I. 137, this court has already construed certain portions of this will, relating to the estate of the other sister Alice, and held that "at the time the particular estate in the mother Alice was created, the remainderman was *in esse* and had the present ability of taking the seizin in case the particular estate were to determine; but the right of Theodore, the remainderman, to any estate was uncertain as it was dependent on a condition, namely, the death of his mother before the termination of the trust. If his mother survived her sister and the three nieces named, at the death of the mother the trust terminated and no estate was left for the remainderman. Until the death of Alice, his mother, the estate of Theodore was a contingent remainder. Upon her death this estate became a vested remainder in Theodore, subject to being divested upon his death leaving children surviving him. As Theodore had no children the remainder passed by his will to his widow Nancy." Further on the court said: "The gifts to the children of Rose and to the children of Alice by Wirt Robinson are made in general terms, without naming any of the beneficiaries. But the children of Alice by her first marriage, Theodore and John, are not only designated by name, but further are referred to as the testator's grandsons, the testator apparently evincing thereby an intention to make a gift, not to a class composed of all the children of Alice, but a particular gift to each of the grandsons named, individually. Upon the death of Alice the proportionate share of Theodore in the income became fixed, and thereafter was not subject to an enlargement or diminution; as one of the three children of Alice, Theodore then became entitled to one-third of the income, and this one-third of the income now belongs to his widow Nancy."

It seems impossible to reconcile the majority opinion with the opinion in the Robinson case. The one holding that the interest became vested on the death of the testator and the other that it was contingent and only became vested on the death of the life tenant. In the Robinson case the life

tenant died while her son was living and in the present case the son died before his mother. If in the Robinson case the remainder could only vest upon the decease of the mother, how could it vest in the son of Alice before her death?

Robert Grosvenor having died without issue prior to the death of his mother the life tenant, took only a contingent interest in the estate, both as to income and principal, dependent upon his surviving his mother and dying without issue. Therefore, the gift being to the "children of Rose", was a gift to a class and upon the death of Robert during the existence of the life tenancy his interest would pass to his brothers and sisters who survived him.

It seems to me that the gift to the "children of Rose" was a gift to a class as defined in the opinion in *Hazard* v. *Stevens*, 36 R. I. 90, "a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal, or some other definite proportions, the share of each being dependent for its amount upon the ultimate number."

The testator in two instances in his will specifically names the beneficiaries, and in two other instances makes a gift under the general designation of "children of Rose" or "children of Alice."

*Robinson*, for an opinion, 45 R. I. 137, this court emphasized the fact that certain beneficiaries were designated by name while others were referred to by a general designation as the children of Rose or Alice. While the designation by name may not be conclusive it is of service in ascertaining whether a contingent or vested interest was in the mind of the testator.

It is not necessary, however, to rely wholly upon the designation by name. The clause of the will under consideration provides that "in case of the death of my daughter Rose before the period of distribution hereinafter named, the share of my said net income which would otherwise have been payable to my daughter Rose shall be payable equally to her children, share and share alike."

It is beyond question that if the testator had added the words "then living" after the word "children" that Robert Grosvenor would have taken only a contingent remainder under said clause. If the testator had added said words, "then living" and Robert Grosvenor had predeceased his mother Rose, leaving issue, such issue would take nothing under said clause.

The fact that the testator subsequently states in his will that "in all of the above cases the children of a deceased child shall take the share his or her parent would have been entitled to, *if then living, per stirpes* and not *per capita*" is significant, and is a strong, if not conclusive, indication that it was the intention of the testator that the children of Rose were to take nothing under said will unless living at the time of her death. I also think that the clause of the will in question bears evidence that it was the intent of the testator to restrict the property to those of his own blood.

For the reasons stated I conclude that, "the children of Rose" took a contingent interest in both income and principal and that being members of a class the interest of Robert Grosvenor passed to his surviving brothers and sisters upon his death.

SWEENEY, J. concurs in this dissenting opinion.

*Claude R. Branch, Charles G. Edwards, Edwards & Angell,* for admr. estate of Robert Grosvenor and Aerielle F. Grosvenor.

*Sheffield & Harvey,* for surviving brothers and sisters of Robert Grosvenor.